IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>GRUPO HIMA SAN PABLO, INC.<br><br>Debtor | CASE NO. 23-02510 (ESL)<br>CHAPTER 11 |
| IN RE:<br><br>CENTRO MEDICO EL TURABO, INC.<br><br>Debtor | CASE NO. 23-02513 (ESL)<br>CHAPTER 11<br><br>FILED AND ENTERED 11/3/2026 |

OPINION AND ORDER

The above-captioned cases are before the court upon the *Motion in Compliance with Order [] and Reinstated Request for Entry of Sanctions* filed by Metro Caguas Incorporated (“**Metro Caguas**”) (the “**Motion in Compliance**”, Bankr. Case No. 23-02510, dkt. #1605; Bankr. Case No. 23-02513, dkt. #1696); the *Motion for Reconsideration Motion to Amend and Alter Orders, for Relief from Orders Pursuant to FRBP 9023 (FRCP 59(e)) and FRBP 9024 (FRCP P60 (b))* filed by a group of former employees of the Debtors (the “**State Court Litigants**”) (the “**Motion for Reconsideration**”, Bankr. Case No. 23-02510, dkt. #1611; Bankr. Case No. 23-02513, dkt. #1703) and the *Special and Limited Appearance to Join and Adopt Arguments in Motion for Reconsideration* filed by Dr. Alfonso Serrano Isern (Bankr. Case No. 23-02510, dkt. #1625; Bankr. Case No. 23-02513, dkt. #1717), Dr. Carmen M. Cortés Morales (Bankr. Case No. 23-02510, dkt. #1630; Bankr. Case No. 23-02513, dkt. #1722), and Ahira M. Lizardi Buonomo (Bankr. Case No. 23-02510, dkt. #1634; Bankr. Case No. 23-02513, dkt. #1726), joining and adopting the *Motion for Reconsideration*; the *Response to Motion in Compliance* filed by the State Court Litigants (Bankr. Case No. 23-02510, dkt. #1619; Bankr. Case No. 23-02513, dkt. #1711); the *Opposition to State Court Litigants Motion for Reconsideration [] and Response to Motion in Compliance []* filed by Metro Caguas (Bankr. Case No. 23-02510, dkt. #1627; Bankr. Case No. 23-02513, dkt. #1720); and the *Response to “Opposition to State Court Litigants Motion for Reconsideration [] and Response to Motion in*

*Compliance []"* filed by the State Court Litigants (Bankr. Case No. 23-02510, dkt. #1638; Bankr. Case No. 23-02513, dkt. #1729). Also before the court are the *Amended Motion Requesting Entry of Order on Contested Matter* filed by Metro Caguas (Bankr. Case No. 23-02510, dkt. #1835; Bankr. Case No. 23-02513, dkt. #1913); and the *Response to Amended Motion Requesting Entry of Order on Contested Matter* filed by the State Court Litigants (Bankr. Case No. 23-02510, dkt. #1854; Bankr. Case No. 23-02513, dkt. #1934).

For the reasons stated herein, the *Motion for Reconsideration* filed by the State Court Litigants (Bankr. Case No. 23-02510, dkt. #1611; Bankr. Case No. 23-02513, dkt. #1703) and the motions filed by Dr. Alfonso Serrano Isern (Bankr. Case No. 23-02510, dkt. #1625; Bankr. Case No. 23-02513, dkt. #1717), Dr. Carmen M. Cortes Morales (Bankr. Case No. 23-02510, dkt. #1630; Bankr. Case No. 23-02513, dkt. #1722), and Ahira M. Lizardi Buonomo (Bankr. Case No. 23-02510, dkt. #1634; Bankr. Case No. 23-02513, dkt. #1726) are hereby DENIED. In addition, *Motion in Compliance* filed by Metro Caguas (Bankr. Case No. 23-02510, dkt. #1605; Bankr. Case No. 23-02513, dkt. #1696) is also DENIED.

## *I. <u>Introduction</u>*

These bankruptcy proceedings were commenced by the Debtors to effectuate the sale of substantially all of the Debtors' assets with the intent of maximizing the value of the estate (Bankr. Case 23-2510, dkt. #4, p. 8, ¶31; Bankr. Case 23-02513, dkt. #4, p. 8, ¶31). To that extent, the Debtors promptly filed proposed bidding procedures in connection with the sale of the Debtors' assets and the form and manner of notice of the proceedings (the "**Bidding Procedures Motion**", Bankr. Case 23-02510, dkt. #65; Bankr. Case 23-02513, dkt. #57), which were subsequently approved by the court (the "**Bidding Procedures Order**", Bankr. Case 23-02510, dkt. #83; Bankr. Case 23-02513, dkt. #77).

As part of the sale proceedings, Metro Caguas acquired the Caguas Assets[1]. Following the acquisition, former employees of Centro Médico del Turabo, Inc. ("**Centro Médico**"), filed

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the underlying sale documents, including *Debtors' Motion to Inform the Successful Bidder for the Caguas Assets Pursuant to the Bidding Procedures Entered on August 23, 2023* (Bankr. Case 23-02510, dkt. #304; Bankr. Case

state court complaints against Metro Caguas, challenging their employment termination during or after the transition of operations from the Debtors to Metro Caguas. Metro Caguas sought several remedies against the State Court Litigants, including a court order to enjoin the state court litigation and to enforce the terms of the *Sale Order* and sanctions. On June 27, 2025, the court entered an *Order* granting Metro Caguas' request for entry of an order to enforce the *Sale Order* as unopposed (Bankr. Case No. 23-02510, dkt. #1409; Bankr. Case No. 23-02513, dkt. #1506). Such *Order* was amended on November 12, 2025, to clarify that the *Sale Order* enjoins the prosecution of claims against Metro Caguas arising from the Debtors' pre-sale conduct, including successor liability claims, and does not extend to direct liability claims resulting from Metro Caguas' post-sale conduct (Bankr. Case No. 23-02510, dkt. #1601; Bankr. Case 23-02513, dkt. #1692). The State Court Litigants sought reconsideration of the amended *Order* (Bankr. Case No. 23-02510, dkt. #1611; Bankr. Case 23-02513, dkt. #1703) and Metro Caguas filed an opposition thereto (Bankr. Case No. 23-02510, dkt. #1627; Bankr. Case 23-02513, dkt. #1720).

*II.* *Procedural Background*

1. On August 21, 2023, the Debtors filed the *Bidding Procedures Motion*, requesting the court's approval for bidding procedures in connection with the sale of the Debtors' assets and the form and manner of notice of the proceedings (Bankr. Case 23-02510, dkt. #65; Bankr. Case 23-02513, dkt. #57). Article 1.11.6.1 of the proposed Asset Purchase Agreement established that a Purchaser of the Debtors' assets would not assume or become responsible for:

> any and all liabilities or obligations (including without limitation any and all penalties, fines, settlements, interests, costs or expenses) arising out of or incurred in connection with any and all claims, litigation or legal proceedings associated with, arising out of or in connection with any and all claims, litigation or legal proceedings (whether instituted prior to or after the Closing) of any employee (whether hired by Purchaser or not), for any severance liability, reinstatement, back pay liability, debts, termination, failure to notify, failure to bargain, negligent or willful acts, errors,

23-02513, dkt. #349), the *Asset Purchase Agreement* (Bankr. Case 23-02510, dkt. #344-1; Bankr. Case 23-02513, dkt. #395-1), and the *Order Approving Purchase and Sale Agreements of Grupo Hima Caguas Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims Interests and Encumbrances* (the "**Sale Order**", Bankr. Case No. 23-02510, dkt. #476; Bankr. Case No. 23-02513, dkt. #570).

> omissions, breach of contract, misconduct, termination, employee seniority accrued while employed with Seller and successorship liability, retaliation, discrimination or discriminatory practices, asserted by or committed against any employee, and liabilities of whatever kind or nature in law, equity or otherwise, whether known or unknown, which occurred, or arise from events that occurred, prior to the Closing Date.

Bankr. Case 23-02510, dkt. #65, Exhibit 6, p. 20; Bankr. Case 23-02513, dkt. #57, Exhibit 6, p. 20.

2. Article 5.3.1 of the proposed Asset Purchase Agreement further provided that the Seller acknowledged that the Purchaser would not be obligated to offer employment to any employees of the Debtors (Bankr. Case 23-02510, dkt. #65, Exhibit 6, p. 29; Bankr. Case 23-02513, dkt. #57, Exhibit 6, p. 29).

3. Article 13 of the proposed Asset Purchase Agreement delimited a process for Buyers to hire employees at their discretion, the management of hired employee records, the responsibility for workers' compensation and the Seller's responsibility to comply with the Workers Adjustment and Retraining Notification Act (Bankr. Case 23-02510, dkt. #65, Exhibit 6, p. 39-40; Bankr. Case 23-02513, dkt. #57, Exhibit 6, p. 39-40).

4. On August 23, 2023, the court entered the *Bidding Procedures Order*, approving the bidding procedures, the form and manner of service, and scheduling the Auction and the Sale Hearing (Bankr. Case 23-02510, dkt. #83; Bankr. Case 23-02513, dkt. #77). Importantly, the court ordered the Debtors to serve the Sale Notice to the Sale Notice Parties, which included the Debtors' employees (Bankr. Case 23-02510, dkt. #83, p.11, ¶20; Bankr. Case 23-02513, dkt. #77, p.11, ¶20). Also, the court ordered the Debtors to publish the Sale Notice once in a newspaper of national circulation and to post all sale related documents on the case website: https://dm.epiq11.com/case/grupohima/info.[2] (Bankr. Case 23-02510, dkt. #83, p.12, ¶21; Bankr. Case 23-02513, dkt. #77, p.12, ¶21).

---

[2] On August 15, 2023, the Debtors filed an *Application of Debtor for Entry of Order Authorizing Employment and Payment of Epiq Corporate Restructuring LLC as Notice and Claims Agent, Nunc pro Tunc to the Petition Date* (Bankr. Case 23-02510, dkt. #11; Bankr. Case 23-02513, dkt. #11). The employment included dissemination of information to the public through the use of a case website. The employment was approved by the court on August 21, 2023. (Bankr. Case 23-02510, dkt. #62, Bankr. Case 23-02513, dkt. #55).

5. The *Bidding Procedures Order* further stated that:

> Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008 and is reasonably calculated to provide notice to any affected party, including any Potential Bidder(s), and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

Bankr. Case 23-02510, dkt. #83, p.12, ¶21; Bankr. Case 23-02513, dkt. #77, p.12, ¶21.

6. The *Bidding Procedures Order* also stated that failure to timely file an objection thereto would bar the assertions of any objection to the consummation of the sale and all the transactions related to it (Bankr. Case 23-02510, dkt. #83, p.12, ¶22; Bankr. Case 23-02513, dkt. #77, p.12, ¶22).

7. On September 1, 2026, the Debtors filed a *Certificate of Publication* related to the publication of the Notice of Action and Sale Hearing at the San Juan Daily Star (Bankr. Case 23-02510, dkt. #146; Bankr. Case 23-02513, dkt. #146). Therein, the Debtors also informed the court that all the sale documents were available through the case website.

8. On October 3, 2023, the Debtors informed the court that they had received a qualifying bid from Metro Caguas for the purchase of the Caguas Assets (Bankr. Case 23-02510, dkt. #304; Bankr. Case 23-02513, dkt. #349).

9. On October 12, 2023, the Debtors filed the Asset Purchase Agreement for Successful Bidder for the Caguas Assets (Bankr. Case 23-02510, dkt. #344, Bankr. Case 23-02315, dkt. #395) executed by and among Debtors (as Sellers) and Metro Caguas (as Purchaser), which substantially conformed to the proposed Asset Purchase Agreement previously approved by the court (Bankr. Case 23-02510, dkt. #83; Bankr. Case 23-02513, dkt. #77).

10. On October 31, 2023, the Debtors filed a *Motion* (Bankr. Case 23-02510, dkt. #429, Bankr. Case 23-2513, dkt. #503) submitting a revised proposed *Sale Order* for the Caguas Assets in response to several objections to the sale and the qualifying bid, as ordered by the court at the hearing held on October 19, 2023 (see, *Minutes*, Bankr. Case 23-02510, dkt. #397, Bankr. Case 23-2513, dkt. #467).

11. In response to further objections, the Debtors filed subsequent revised versions of the proposed *Sale Order* for the Caguas Assets on November 7, 2023 (Bankr. Case 23-02510, dkt. #446, Bankr. Case 23-2513, dkt. #535) and on November 9, 2023 (Bankr. Case 23-02510, Dkt. #454, Bankr. Case 23-2513, dkt. #549).

12. On November 14, 2023, the court entered the *Sale Order* (Bankr. Case No. 23-02510, dkt. #476; Bankr. Case No. 23-02513, dkt. #570) relevant to the sale of the Caguas Assets. See also, *Asset Purchase Agreement*, Bankr. Case No. 23-02510, dkt. #344-1; Bankr. Case No. 23-02513, dkt. #395-1. In relevant part, the *Sale Order* reads as follows:

> H. The Court hereby orders that the Assets be transferred by the Debtors to METRO CAGUAS INCORPORATED free and clear of all liens, claims and encumbrances …
>
> I. … the transfer of the title of the Assets shall be free and clear of all liens, claims and encumbrances against or with respect to any of the Debtors or in, on, or against or with respect to any of the Assets, including, but not limited to: … (d) claims, debts, encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to: … (ii) all debts, liabilities, obligations, contractual rights and claims, including, but not limited to, those related to … labor, employment, and pension claims; … (iv) any rights under labor or employment agreements; … (vi) any liabilities of Debtors for any present or former employees, officers, directors, members, retirees, independent contractors or consultants of Debtors, including, without limitation, any liabilities associated with any claims for wages or other benefits, bonuses, insurance, back pay, overtime, union dues, meal period payments, reinstatement, profit sharing, requirement and/or other deferred compensation, sick pay, accrued vacation, workers' compensation, severance, retention, termination, severance, or other payments

> (the preceding shall include, but not be limited to the following: any and all liabilities or obligations (including without limitation any and all penalties, fines, settlements, interests, costs or expenses) arising out of or incurred in connection with any and all claims, litigation or legal proceedings associated with, arising out of or in connection with any and all claims, arbitration awards, judgments, litigation or legal proceedings (whether instituted prior to or after the Closing) of any employee or employees (whether hired by METRO CAGUAS INCORPORATED or not), for any severance liability, reinstatement, back pay liability, debts, termination, failure to notify, failure to bargain, negligent or willful acts, errors, omissions, breach of contract, breach of Stipulation, breach of Collective Bargaining Agreement, misconduct, termination, employee seniority accrued while employed with Seller and successorship liability, retaliation, discrimination or discriminatory practices, asserted by or committed against any employee, and liabilities of whatever kind or nature in law, equity or otherwise, whether known or unknown, which occurred, or arise from events that occurred, prior to the Closing Date; any and all liabilities or obligations, union dues, severance obligations, (including without limitation any and all penalties, fines, settlements, interests, costs or expenses, back pay, damages, under any local, state, federal or Commonwealth of Puerto Rico labor and employment laws, (including without limitation: any and all claims …. which arise out of or as a result of such employees employment with Seller up to the Closing Date) …

Bankr. Case No. 23-02510, dkt. #476, pp. 6-9, ¶H-I; Bankr. Case No. 23-02513, dkt. #570, pp. 6-9, ¶H-I.

13. The Closing Date of the sale of the Caguas Assets occurred on December 19, 2023. See *Report on Sales for the Grupo Hima Caguas Assets*, Bankr. Case No. 23-02510, dkt. #591, ¶5; Bankr. Case No. 23-02513, dkt. #673, ¶5.

14. On June 9, 2025, Metro Caguas filed a *Motion to Enforce Sale Order Under Retained Jurisdiction* (the "**Motion to Enforce**", Bankr. Case No. 23-02510, dkt. #1374; Bankr. Case No. 23-02513, dkt. #1472), seeking, *inter alia*, to enforce the *Sale Order* and enjoin the continued prosecution of seven (7) employment related state court complaints filed against Metro Caguas by various individuals who were terminated from their employment during or after the transition of operations from the Debtors to Metro Caguas (each a "**State Court Action**"):

a. Arahiza Vázquez Colón v. Metro Caguas Incorporated, *et al.*, Civ. Case No. HU2024CV00501, Humacao Superior Court;

b. Ana Lydia Vega Martinez y Otros v. Metro Caguas Incorporated, *et al.*, Civ. Case No. CG2024CV02388, Caguas Superior Court;

c. Shirley Morán Alverio y Otros v. Metro Caguas Incorporated, Civ. Case No. CG2024CV04497, Caguas Superior Court;

d. Aida E. Bermúdez Ramos y Otros v. Metro Caguas Incorporated, Civ. Case No. CG2024CV02389, Caguas Superior Court;

e. Aida M. Alverio Rosa v. Metro Caguas Incorporated, Civ. Case No. CG2024CV04498, Caguas Superior Court;

f. Ahira M. Lizardi Buonomo v. Metro Caguas Incorporated h/n/c/ Hospital Pavía Caguas, Civ Case No. CG2024CV04103, Caguas Superior Court; and

g. Alfonso Serrano Isern y Otros v. Metro Caguas Incorporated, h.n.c. Hospital Pavía Caguas, Civ. Case No. CG2024CV04529, Caguas Superior Court.

15. The *Motion to Enforce* argues that the State Court Litigants claim that Metro Caguas is a 'successor' of the Debtors, which Metro Caguas states is contrary to the *Sale Order*. As such, Metro Caguas requested the entry of an order dismissing with prejudice of all claims and causes of action asserted against Metro Caguas for "severance, salaries, benefits, years of service, or any other claim that seek to impose obligations arising from the employment relationship with the Debtor[s]", declaring that the *Sale Order* bars any claim or claims in violation thereof that may precede the date of the *Sale Order*, finding the State Court Litigants in contempt of the *Sale Order* and directing them to pay all costs and fees incurred in defending itself from its unlawful actions, and retaining jurisdiction to remedy any prior or continued violations.

16. No response to the *Motion to Enforce* having been filed, the same was granted as unopposed on June 27, 2025 (the "**Order to Enforce**", Bankr. Case No. 23-02510, dkt. #1409; Bankr. Case No. 23-02513, dkt. #1506).

17. On August 20 and 21, 2025, Metro Caguas filed seven (7) *Motion[s] Requesting Entry of Comtempt (sic) Order, Entry of Sanctions* (the "**Motions for Contempt**", Bankr. Case No. 23-02510, dkts. ##1481-1487; Bankr. Case No. 23-02513, dkts. ##1585-1593), each with respect to a specific State Court Action, arguing that the State Court Litigants continued to pursue their claims against Metro Caguas after and notwithstanding the entry of the *Order to Enforce*. By the *Motions for Contempt*, Metro Caguas requested that this court further enjoins the continued prosecution of the State Court Actions, finds the State Court Litigants and their counsel in contempt and sanctions imposed, grant attorneys' fees and costs of no less than $35,000.00 on account of Metro Caguas having to "defend[] itself", and retains jurisdiction to remedy any prior or continued violation of the *Sale Order*.

18. In response to the *Motions for Contempt*, the State Court Litigants who are parties to four (4) of the seven (7) State Court Actions[3] filed an *Amended Special and Limited Appearance* (the "**Amended Special Appearance**", Bankr. Case No. 23-02510, dkt. #1509; Bankr. Case No. 23-02513, dkt. #1608), wherein they appeared "solely to advise the Bankruptcy Court that it lacks personal jurisdiction over the [State Court Litigants]" (id., at §1) and alleged that such appearance "does not constitute consent to this Court's jurisdiction for any purpose other than challenging the lack of personal jurisdiction, and is made without submission to this Court's jurisdiction" (id.). Metro Caguas filed a *Consolidated Reply to Amended Special and Limited Appearance* (Bankr. Case No. 23-02510, dkt. #1527; Bankr. Case No. 23-02513, dkt. #1625), to which the State Court Litigants responded with a *Sur-Reply to Consolidated Reply to Amended Special and Limited Appearance and Special and Limited Appearance* (Bankr. Case No. 23-02510, dkt. #1534; Bankr. Case No. 23-02513, dkt. #1632).

19. On October 6, 2025, Metro Caguas filed a *Motion Requesting Hearing on Contested Matter* (Bankr. Case No. 23-02510, dkt. #1557; Bankr. Case No. 23-02513, dkt. #1653), which was denied by the court on November 12, 2025 (Bankr. Case No. 23-02510, dkt.

---

[3] Specifically, Civ. Case Nos. CG2024CV02388, CG2024CV02389, CG2024CV04497, and CG2024CV04498. See, Bankr. Bankr. Case No. 23-02510, dkt. #1509, ¶ 11; Bankr. Case No. 23-02513, dkt. #1608, ¶ 11.

#1600; Bankr. Case No. 23-02513, dkt. #1691) after concluding that the matter under the court's consideration is a question of law as the relevant facts are not in controversy.

20. On November 12, 2025, the court amended the *Order to Enforce*, *nunc pro tunc*, to clarify that the *Sale Order* enjoins the prosecution of claims against Metro Caguas arising from the Debtors' pre-sale conduct and *does not* extend to direct liability claims resulting from Metro Caguas' post-sale conduct (the "**Amended Order to Enforce**", Bankr. Case No. 23-02510, dkt. #1601; Bankr. Case No. 23-02513, dkt. #1692). The court also found that it was not in a position to determine which of the State Court Actions are in violation of the *Sale Order*, if any, and ordered Metro Caguas to brief the court on the nature of the causes of actions asserted against it in each State Court Action, relative to each State Court Litigant. In addition, the court denied the *Motions for Contempt* and ordered Metro Caguas and the Clerk of the Court to give notice of such order to each State Court Litigant identified by Metro Caguas in the *Motion to Enforce* in the manner described therein.

21. On November 18, 2025, Metro Caguas filed the *Motion in Compliance* (Bankr. Case No. 23-02510, dkt. #1605; Bankr. Case No. 23-02513, dkt. #1696), and argued that only two (2) causes of action are directly attributable to Metro Caguas' *post-sale conduct*, namely: a discrimination claim in Civ. Case No. HU2024CV0501 filed by Arahiza Vázquez Colón, and "potential claims for Metro Caguas's cancellation of the probationary period" in Civ. Case No. CG2024CV02389 filed by Aida E. Bermúdez Ramos, Alice M. López Acevedo, Carlos N. Galarza Hernández, Caroline M. Camacho Landrón, Grissel Muñoz Rodríguez, Jungy Nunez Rivera, María Del C. Mora González, Marisol Castro Goyco, Nitza Ivette Díaz Carrión, Sandra I. Rodríguez Colón and Vanessa Contreras Roldán, and in Civ. Case No. CG2024CV04498 filed by Aida Alverio Rosa and Amy González Díaz. Metro Caguas also provided a description of the causes of action brought forth by each State Court Litigant in the State Court Actions and reinstated its request for sanctions against the State Court Litigants. Metro Caguas submitted the original Spanish versions of multiple documents related to the State Court Actions and, on a

separate motion, submitted the English translations thereof (see, Bankr. Case No. 23-02510, dkt. #1645; Bankr. Case No. 23-02513, dkt. #1737).

22. On November 24, 2025, the State Court Litigants filed the *Motion for Reconsideration* (Bankr. Case No. 23-02510, dkt. #1611; Bankr. Case No. 23-02513, dkt. #1703) requesting that the court reconsider, vacate and set aside the *Amended Order to Enforce* dated November 12, 2025 (Bankr. Case No. 23-02510, dkt. #1601; Bankr. Case No. 23-02513, dkt. #1692) and the *Order to Enforce* dated June 27, 2025 (Bankr. Case No. 23-02510, dkt. #1409; Bankr. Case No. 23-02513, dkt. #1506) and declare that none of the State Court Litigants are banned from prosecuting their alleged claims against Metro Caguas for severance under Puerto Rico Law 80-1976 in state court.[4] Alfonso Serrano Isern (Bankr. Case No. 23-02510, dkt. #1625; Bankr. Case No. 23-02513, dkt. #1717)[5], Carmen M. Cortes Morales (Bankr. Case No. 23-02510, dkt. #1630; Bankr. Case No. 23-02513, dkt. #1722)[6], and Ahira M. Lizardi Buonomo (Bankr. Case No. 23-02510, dkt. #1634; Bankr. Case No. 23-02513, dkt. #1726)[7] joined and adopted the arguments raised in the *Motion for Reconsideration*.

23. On November 29, 2025, the State Court Litigants filed a response to the *Motion in Compliance* arguing, in sum, that "all the [s]tate [c]ourt causes of action allege direct liability against [Metro Caguas] based on [Metro Caguas'] post-sale conduct" (Bankr. Case No. 23-

[4] The State Court Litigants included multiple exhibits in support of the *Motion for Reconsideration* in the Spanish language. See *Motion for Leave to File Documents in Spanish* (Bankr. Case No. 23-02510, dkt. #1612, 1615; Bankr. Case No. 23-02513, dkt. #1704, 1707). The State Court Litigants subsequently filed certified English translations (see, Bankr. Case No. 23-02510, dkt. #1643; Bankr. Case No. 23-02513, dkt. #1735).

[5] Alfonso Serrano Isern is a party to Civ. Case No. CG2024CV04529. He argues that he "was an employee of the Debtors, was terminated in connection with the sale, was not retained by [Metro Caguas], and has a pending claim under Puerto Rico Law 80 [ ] in the Supreme Court of Puerto Rico" (Bankr. Case No. 23-02510, dkt. #1625, §4; Bankr. Case No. 23-02513, dkt. #1717, §4).

[6] Carmen M. Cortes Morales is a party to Civ. Case No. CG2024CV04529. She argues that she "was an employee of the Debtors, was terminated in connection with the sale, was not retained by [Metro Caguas], and has a pending claim under Puerto Rico Law 80 [ ] in the Supreme Court of Puerto Rico" (Bankr. Case No. 23-02510, dkt. #1630, §4; Bankr. Case No. 23-02513, dkt. #1722, §4).

[7] Ahira M. Lizardi Buonomo is a party to Civ. Case No. CG2024CV04103. She argues that she "was an employee of the Debtors, was terminated in connection with the sale, was not retained by [Metro Caguas], and has a pending claim under Puerto Rico Law 80 [ ] in the Supreme Court of Puerto Rico" (Bankr. Case No. 23-02510, dkt. #1634, §4; Bankr. Case No. 23-02513, dkt. #1726, §4).

02510, dkt. #1619, §5; Bankr. Case No. 23-02513, dkt. #1711, §5). They argue that the State Court Litigants who are parties to Civ. Case Nos. CG2024CV02389 and CG2024CV04498 were discharged on February 5 and 6, 2024 by Metro Caguas (id., at §9), that the State Court Litigants who are parties to Civ. Case Nos. CG2024CV02388 and CG2024CV04497 were discharged on December 20, 2023, and that Metro Caguas "determined and made the decisions regarding which employees would be dismissed effective December 20, 2023, and which employees would continue working thereafter" (id., at §10). It is the State Court Litigants' position that the sale became effective on November 14, 2023, when the court entered the *Sale Order*, and because all terminations took place after the sale. Thus, the State Court Actions are based on post-sale conduct. The State Court Litigants also claim that Metro Caguas did not retain any amounts from the sale price to cover the retained employees' severance payments pursuant to Puerto Rico Law 80-1976.

24. On December 8, 2025, Zoraida Ortiz de Jesús, a party to Civ. Case No. CG2024CV04103, filed a *Special and Limited Appearance to Inform Withdrawal of State Court Action Due to Financial Duress* (Bankr. Case No. 23-02510, dkt. #1624) asserting, in sum, that she moved to withdraw her state court claims against Metro Caguas, not as an admission of lack of merit, but due to financial hardship, lack of bankruptcy counsel, and intimidation from aggressive litigation tactics, which she claims effectively coerced her decision.

25. Later, Metro Caguas filed an *Opposition to State Court Litigants['] Motion for Reconsideration [] and Response to Motion in Compliance []* (Bankr. Case No. 23-02510, dkt. #1627; Bankr. Case No. 23-02513, dkt. #1720), asserting that the State Court Litigants cannot be excused from complying with the *Sale Order* and that, per the *Sale Order*, the cutoff point for determining liability is the Closing Date (December 19, 2023) and not the date on which the court entered the *Sale Order* (November 14, 2023). Thus, Metro Caguas argues that the relevant conduct occurred pre-closing, and requests that the court deny reconsideration, enforce the *Sale Order*, enjoin the State Court Actions, and impose sanctions on the State Court Litigants.

26. On December 19, 2025, the State Court Litigants filed a *Response to "Opposition to State Court Litigants['] Motion for Reconsideration [] and Response to Motion in Compliance []"* (Bankr. Case No. 23-02510, dkt. #1638; Bankr. Case No. 23-02513, dkt. #1729) arguing that they were not properly notified of the *Sale Order* and that their claims arise from post-closing conduct outside its scope.[8] They request that the court allow their State Court Actions to proceed and grant reconsideration.

27. On June 12, 2026, Metro Caguas filed an *Amended Motion Requesting Entry of Order on Contested Matter* (Bankr. Case No. 23-02510, dkt. #1835; Bankr. Case No. 23-02513, dkt. #1913) arguing that the State Court Litigants continue to pursue the State Court Actions in violation of the *Sale Order* and the *Order to Enforce*. Metro Caguas requested that the court enjoin the State Court Actions or, alternatively, issue a temporary order staying the State Court Actions pending final resolution of the motions under the court's consideration.

28. On June 25, 2026, the State Court Litigants filed a *Response to Amended Motion Requesting Entry of Order on Contested Matter []* (Bankr. Case No. 23-02510, dkt. #1854; Bankr. Case No. 23-02513, dkt. #1934) arguing that Metro Caguas' request to enjoin the State Court Actions in the *Motion Requesting Entry of Order on Contested Matter* (Bankr. Case No. 23-02510, dkt. #1825; Bankr. Case No. 23-02513, dkt. #1900) is duplicative, unsupported, and unnecessary because the actions are already stayed.

Commented [NR1]: Confirmar con el docket que tengo todas las entradas relevantes.

## *III.* Discussion

### *A.* *Motion for Reconsideration Standard Under Fed. R. Civ. P. 59(e), 60(b)*

Motions for reconsideration "are not recognized by the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure in *haec verba*." In re Mujica, 470 B.R. 251, 253 (Bankr. D.P.R. 2012), *aff'd*, 492 B.R. 355 (D.P.R. 2013). See also Lavespere v. Niagara Mach. & Tool Works Inc., 910 F.2d 167, 173 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993), abrogated

[8] The State Court Litigants had previously filed a motion requesting leave to file a response to Metro Caguas' opposition to the *Motion for Reconsideration* (Bankr. Case No. 23-02510, dkt. #1629; Bankr. Case No. 23-02513, dkt. #1721), which was granted by the court (Bankr. Case No. 23-02510, dkt. #1632; Bankr. Case No. 23-02513, dkt. #1724).

on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1075–76 (5th Cir. 1994); In re Pabon Rodriguez, 233 B.R. 212, 218 (Bankr. D.P.R. 1999), *aff'd*, 2000 WL 35916017 (B.A.P. 1st Cir. 2000), *aff'd*, 17 F. App'x 5 (1st Cir. 2001), citing Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991); Portugues–Santa v. B. Fernandez Hermanos, Inc., 614 F.Supp.2d 221, 225 (D.P.R. 2009); In re Martinez, 2013 WL 3808076, at *4 (Bankr. D.P.R. 2013); In re Acosta, 497 B.R. 25, 31 (Bankr. D.P.R. 2013). Rather, federal courts have considered motions so denominated as either a motion to "alter or amend" under Fed. R. Civ. P. 59(e) or a motion for relief of judgment or order under Fed. R. Civ. P. 60(b)[9]. See Fisher v. Kadant, Inc., 589 F.3d 505, 512 (1st Cir. 2009) (noting a motion for reconsideration implicated either Fed. R. Civ. P. 59(e) or 60(b)).

"These two rules are distinct; they serve different purposes and produce different consequences. Which rule applies depends essentially on the time a motion is served. If a motion is served within [fourteen (14)] days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e). If the motion is served after that time, it falls under Rule 60(b)." Pabon Rodriguez, 233 B.R. at 219, quoting Van Skiver, 952 F.2d at 1243.

"The substance of the motion, not the nomenclature used or labels placed on motions, is controlling." In re Lozada Rivera, 470 B.R. 109, 112–113 (Bankr. D.P.R. 2012). Thus, for example, even if filed within the time limit for a motion under Fed. R. Civ. P. 59(e), a motion seeking relief on grounds of "excusable neglect" will be treated as a Fed. R. Civ. P. 60(b)(1) motion, because Fed. R. Civ. P. 59(e) does not provide a vehicle for a party to undo its own procedural failures. See In re Lozada Rivera, 470 B.R. at 113, citing 12–60 Moore's Federal Practice Civil § 60.03. Also see United States v. $23,000 in U.S. Currency, 356 F.3d 157, 164–165 (1st Cir. 2004) (even if timely filed under Fed. R. Civ. P. 59(e), a motion seeking relief on grounds of excusable neglect will be treated as Fed. R. Civ. P. 60(b)(1) motion, because Fed. R. Civ. P. 59(e) does not provide a vehicle for party to undo its own procedural failures); Jennings v. Rivers, 394 F.3d 850, 854–856 (10th Cir. 2005) (a motion timely filed under Fed. R. Civ. P.

[9] Fed. R. Civ. P. 59(e) and 60(b)(1) are made applicable to adversary proceedings under Fed. R. Bankr. P. 9023 and 9024, respectively.

59(e) but asserting ground for relief specified under Fed. R. Civ. P. 60(b), should be evaluated under standards applicable to Fed. R. Civ. P. 60(b) motions).

Fed. R. Civ. P. 59(e) authorizes the filing of a written motion to alter or amend a judgment after its entry. To meet the threshold requirements of a successful Fed. R. Civ. P. 59(e) motion, such motion must demonstrate the "reason why the court should reconsider its prior decision" and "must set forth facts or law of a strongly convincing nature" to induce the court to reverse its earlier decision. In re Schwartz, 409 B.R. 240, 250 (B.A.P. 1st Cir. 2008), citing Pabon Rodriguez, 233 B.R. at 218. See also Mujica, 470 B.R. at 254. For a motion for reconsideration to succeed, "the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." In re Redondo Constr. Corp., 2019 WL 6130938, at *3 (Bankr. D.P.R. 2019), *aff'd*, 621 B.R. 81 (D.P.R. 2020), quoting Mulero-Abreu v. P.R. Police Dep't, 675 F.3d 88, 94 (1st Cir. 2012). See also Pabon Rodriguez, 233 B.R. at 218; BBVA v. Vazquez (In re Vazquez), 471 B.R. 752, 760 (B.A.P. 1st Cir. 2012), citing Aybar v. Crispin–Reyes, 118 F.3d 10, 16 (1st Cir. 1997); In re Zutrau, 563 B.R. 431, 449 (B.A.P. 1st Cir. 2017), citing Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7, n. 2 (1st Cir. 2005), quoting Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146, n. 2 (1st Cir. 2004).

Federal courts have consistently stated that a motion for reconsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources. See Pabon Rodriguez, 233 B.R. at 218. In practice, Fed. R. Civ. P. 59(e) motions are typically denied because of the narrow purposes for which they are intended. See id.; Global Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 245 (1st Cir. 2007) (motions under Fed. R. Civ. P. 59(e) are reviewed for abuse of discretion, reversing only where "the original judgment evidenced a manifest error of law ... or in certain other narrow situations").

A motion for reconsideration cannot be used as a vehicle to re-litigate matters already litigated and decided by the court. See Standard Química de Venezuela v. Central Hispano

International, Inc., 189 F.R.D. 202, 205, n. 4 (D.P.R. 1999). A such, a party moving for Fed. R. Civ. P. 59(e) relief may not repeat arguments previously made, see Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008), "rehash arguments previously rejected or … raise ones that 'could, and should, have been made before judgment issued." Soto-Padró v. Public Buildings Authority, 675 F.3d 1, 9 (1st Cir. 2012) (citations omitted). "[M]otions for reconsideration should not give parties a 'second bite at the apple' or 'another roll of the dice' ". Redondo, 2019 WL 6130938 at *2, quoting Conway v. A.I. DuPont Hosp. for Children, 2009 WL 1492178, at *4 (E.D. Pa. 2009). Also see In re Vazquez, 471 B.R. at 761 ("in denying reconsideration, the bankruptcy court correctly applied the First Circuit precedent against a second bite at the apple: litigants may not use Fed. R. Civ. P. 59(e) to advance arguments they could have made earlier"). "It is therefore exceedingly difficult for a litigant to succeed in a Fed. R. Civ. P. 59(e) motion." In re Mujica, 470 B.R. at 254, citing ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008).

Fed. R. Civ. P. 60(b) "attempts to balance the interest in the stability of judgments with the interest in seeing that judgments not become instruments of oppression and fraud." Alan N. Resnick and Henry J. Sommer, 10 Collier on Bankruptcy ¶ 9024.03 (16th ed. 2024). Hence, "the court may relieve a party from a final judgment, order, or proceeding" for:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6).

In Pioneer, the U.S. Supreme Court ruled that the determination of what constitutes "excusable neglect" is an equitable one, taking into consideration the following factors: (1) the length of the delay and its potential impact on judicial proceedings; (2) the reason for the delay, including whether it was within the reasonable control of the movant; (3) whether the movant

acted in good faith; and (4) whether granting the relief will prejudice the opposing party. Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 395 (1993). The Supreme Court concluded that "excusable neglect" is a flexible concept that is not limited to circumstances beyond the control of the movant. Id., at 388. The U.S. Court of Appeals for the First Circuit (the "First Circuit") incorporated the Pioneer doctrine in Pratt v. Philbrook, 109 F.3d 18 (1st Cir. 1997), and has sustained it ever since. See *e.g.*, United States v. Union Bank for Sav. & Inv. (Jordan), 487 F.3d 8, 24 (1st Cir. 2007); Aja v. Fitzgerald (In re Aja), 441 B.R. 173, 177 (1st Cir. BAP 2011) (upholding the Pioneer test).

The most important factor in this test is the reason for the delay, which requires a statement of the reasons and a satisfactory explanation for the delay. See Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 6 (1st Cir. 2001); EnvisioNet Computer Servs., Inc. v. ECS Funding LLC, 288 B.R. 163, 166 (D.Me. 2002). No "excusable neglect" can be determined in the absence of unique or extraordinary circumstances. Fisher, 589 F.3d at 512; Haddock–Rivera v. ASUME, 486 B.R. 574, 578 (1st Cir. BAP 2013), citing Morse v. Earle (In re Earle), 2008 Bankr. LEXIS 3961, 2008 WL 8664763 (1st Cir. BAP 2008). "The trial court has wide discretion to determine the existence of neglect or lack thereof and whether it was excusable or not." In re Lozada Rivera, 470 B.R. at 114, citing Graphic Communications, 270 F.3d at 6-7; $23,000 in U.S. Currency, 356 F.3d at 165 ("[Trial] courts enjoy considerable discretion in deciding motions brought under Civil Rule 60(b)"), and In re Shepherds Hill Development Co., 316 B.R. 406, 418 (1st Cir. BAP 2004).

Here, the court's *Amended Order to Enforce* was entered on November 12, 2025, and the *Motion for Reconsideration* was filed twelve (12) days later, on November 24, 2025. A review of the *Motion for Reconsideration* shows that Debtors request relief under both Fed. R. Civ. P. 59 and 60, averring error of fact and law. Therefore, the request for reconsideration shall be taken as one under Fed. R. Civ. P. 59(e).

*B. Jurisdiction*

"Bankruptcy courts—like all federal courts—may retain jurisdiction to interpret and enforce their prior orders". Gupta v. Quincy Medical Center, 858 F.3d 657, 663 (1st Cir. 2017), quoting Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009). A bankruptcy court's decision to interpret and enforce a prior sale order falls under its "arising in" jurisdiction, including when disputes arise. See In re Motors Liquidation Co., 674 B.R. 425, 443 (Bankr. S.D.N.Y. 2025), citing In re Motors Liquidation Co., 829 F.3d 135, 153 (2nd Cir. 2016). Actions which are a direct challenge to a bankruptcy court order approving a sale are within the bankruptcy court's jurisdiction as the bankruptcy courts can enforce their orders. See In re Paris Industries, Corp., 132 B.R. 504, 507-508 (U.S.D.C. Me. 1991). A bankruptcy court has jurisdiction to resolve a matter when "[t]he underlying dispute involves a subsequent purchaser's interpretation of a sale order 'free and clear of liens' under 11 U.S.C. § 363(b)." Middlesex Power Equip. & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002). In this case, the language of the *Sale Order*, which prevents suits against the Purchaser, including successor liability actions, is authorized by the Bankruptcy Code pursuant to 11 U.S.C. § 363, and is within this court's core jurisdiction under 28 U.S.C. §157(b)(2)(N). See In re Bowflex, Inc., 674 B.R. 47 (Bankr. D. N.J. 2025).

However, that does not mean that the bankruptcy court has jurisdiction to address the merits of the State Court Litigants' claims against Metro Caguas. See, *e.g.*, Gupta v. Quincy Medical Center, 858 F.3d 657 (1st Cir. 2017). And that is not what the parties seek in the motions under the court's consideration. Therefore, this *Opinion and Order* is limited to determining the scope of the *Sale Order* and its provisions on successor liability; the issue of notice and, ultimately, the State Court Litigants' request for reconsideration of the court's *Amended Order to Enforce*. The court clarifies that, although it previously ordered the parties to brief on the nature of the causes of action asserted in each State Court Action filed by the State Court Litigants, specifically identifying which claims are directed against Metro Caguas and the conduct underlying each such claim, so that the court could properly assess whether the

referenced State Court Actions are in direct violation of the *Sale Order*, such an assessment may require, or may be interpreted, as a finding on the merits of the State Court Litigants' claims. Therefore, the court will not undertake the task of ferreting through the state court record and individual complaints to identify this information. The court finds that such a determination rests on the state court's jurisdiction and purview. For although this court has jurisdiction to enforce its own orders, it needs not, and cannot, gatekeep these and all future actions that may be presented against Metro Caguas, as Purchaser, and Metro Caguas must assert any defense it may have in the state courts. See Zerand-Bernal Group v. Cox, 23 F.3d 159 (7th Cir. 1994) (determining that a sale "free and clear" of successor liability is a defense that a purchaser should allege in a state court suit).

*C. Scope of the Sale Order and its Provisions on Successor Liability*

The *Sale Order* provides that Metro Caguas purchased the Debtors' assets (as these are defined in the *Sale Order*) "free and clear of all liens, claims and encumbrances" (Bankr. Case No. 23-02510, dkt. #476 at ¶H; Bankr. Case No. 23-02513, dkt. #570 at ¶H), including all liability or claims "of Debtors for any present or former employees" (id., at ¶I), "any liabilities associated with any claims for wages or other benefits, […], severance, […], termination, […], discrimination or discriminatory practices" (id.), among other employment-related liabilities of the Debtors. In addition, the *Sale Order* provides that the transfer of the assets to Metro Caguas "will not subject [Metro Caguas] to any liability whatsoever with respect to the operation of the Assets or employment of the Debtor's current or former employees prior to the Closing Date or by reason of such transfer" (id., at ¶27). Section 363 of the Bankruptcy Code, 11 U.S.C. §363, allows a court "to approve a sale free and clear of claims that would otherwise be assertable against the buyer under a successor liability doctrine." In re RunItOneTime LLC, 2026 Bankr. LEXIS 170, *16 (Bankr. S.D. Tex. Jan. 26, 2026). Successor liability claims may be barred by a sale of estate assets free and clear of liens and interests in order to preserve the priority scheme of the Bankruptcy Code and the principles of equality of distribution by preventing a plaintiff from asserting *in personam* successor liability against the asset purchaser while leaving other

creditors to satisfy their claims from proceeds of the sale, as well as to maximize the value of assets that are sold. See In re East Orange General Hospital, Inc., 587 B.R. 53 (D.N.J. 2018); In re OPCO, Inc., 513 B.R. 871 (Bankr. D. Del. 2014). See also In re TWA, 322 F. 3d 283 (3rd Cir. 2003) (concluding that a bankruptcy court has authority to approve the sale of the debtor's assets free and clear of successor liability claims). Generally, a corporation that buys another corporate entity's assets does not assume a seller's liabilities unless the buyer expressly assumes the same, the transaction is a merger or consolidation, or the transaction amounts to fraudulent or collusive attempt to avoid seller's liabilities; provided due notice under 11 U.S.C. § 102(1) is given. Western Auto Supply v. Savage Arms (In re Savage Indus.), 43 F.3d 714, 717 fn.4, 721 (1st Cir. 1994).

Here, the Asset Purchase Agreement and the *Sale Order* are clear: the intent of the parties was for the sale to be free and clear of successor liability claims. The waiver provided in the *Sale Order* covers liability with respect to the operation of the Assets or employment of the Debtors' current or former employees "prior to the Closing Date or by reason of such transfer" (Bankr. Case No. 23-02510, dkt. #476, ¶27; Bankr. Case No. 23-02513, dkt. #570, ¶27). Hence, any responsibility or liability of the Debtors in regard to its employees *prior* to the Closing Date remained on the Debtors and was not, in any way, transferred to Metro Caguas.

Furthermore, "the purchaser has no successor liability for the actions of the seller or debtor taken after the sale." Wilkins v. Rymes Heating Oils, Inc., 360 F. Supp. 3d 57, 64 (D. N.H. 2019). The record here is incomplete as to how or when the State Court Litigants' employment was terminated. And the State Court Litigants question whether the terminations constitute pre-sale or post-sale conduct of the Purchaser. But, pursuant to the *Sale Order*, the assets were transferred without the obligation to retain employees. And, as per the State Court Litigants' own admissions, Metro Caguas commenced its operations on December 20, 2023, a day after the Closing Date. When Metro Caguas began operations, it informed the employees that they would not be retained. See Bankr. Case 23-2510, dkt. #1611, Exhibit #1. Therefore, any pre-sale or post-sale conduct or omission by Debtors regarding the process of termination

cannot be attributed to Metro Caguas. Metro Caguas cannot be held responsible for the Debtors' actions or, as in this case, inaction. Hence, the Debtors' failure to communicate the termination of employment, if such was the case, cannot be attributed to Metro Caguas.

However, for purpose of clarity, the court highlights that, as per the terms of the *Sale Order*, the cutoff point for determining liability is the Closing Date (December 19, 2023). Therefore, the Purchaser is liable for its own post-sale conduct, starting on December 20, 2023. The language included in the *Sale Order* does not shield Metro Caguas from direct liability for claims arising from its post-sale conduct as these were not waived in the *Sale Order* and the Asset Purchase Agreement. See In re RunItOneTime LLC, 2026 Bankr. LEXIS 170 at *16. Nevertheless, because Metro Caguas is not a successor to the Debtors, the State Court Litigants allegedly discharged by Metro Caguas in February 2024 cannot claim liability amounts computed according to the length of their employment with Centro Médico. See In re ARSN Liquidating Corp., 2017 Bankr. LEXIS 185 (Bankr. D. N.H. Jan. 17, 2017) (finding that a buyer could not be burdened by a debtor's workers' compensation experience rating where the sale order stated clearly that the buyer was a new and separate entity from the debtor and was only purchasing the debtor's assets free and clear of all liens, claims, interests and encumbrances of any kind or nature).

*D. Notice*

The State Court Litigants allege that the *Sale Order* cannot affect their rights against Metro Caguas, such as a successor liability claim, because they had no notice of the *Sale Order*. The State Court Litigants allege that the court made an error of fact in concluding that the State Court Litigants were served with the *Sale Order*. They allege that notice of the bankruptcy filing was insufficient as the filing did not disclose how their rights would be affected. The State Court Litigants state in their statements under penalty of perjury, that they were employees of Centro Médico and worked in the facilities of HIMA in Caguas. They admit that Metro Caguas commenced operations on December 20, 2023, and that they were not retained as employees of Metro Caguas. See Bankr. Case No. 23-02510, dkt. #1611, Exhibit 1; Bankr. Case No. 23-02513,

dkt. #1703, Exhibit 1. The State Court Litigants do not deny that they were aware of the Debtors' bankruptcy proceedings. They allege that they did not receive the *Sale Order* dated November 14, 2023, nor did they receive any filing or notification from the court related to the sale of assets to Metro Caguas. Therefore, they posit that they are not bound by the terms of the *Sale Order*.

The State Court Litigants mainly rely on the Puerto Rico Supreme Court's decision in Rodriguez Oquendo v. Petrie Retail, Inc., 167 D.P.R. 509 (2006) (Official Translation), where the court found that the "free and clear" bankruptcy sale of the assets of Petrie Retail Inc., which included the women retail stores Marianne, was not an impediment to the application of successor liability in the labor law context, and applied the doctrine against the buyer, Urban Brands Inc. The Puerto Rico Supreme Court found support in Zerand-Bernal Group v. Cox, 23 F.3d 159 (7th Cir. 1994).

However, the Zerand-Bernal case is distinguishable from the instant cases. In Zerand-Bernal, the purchaser attempted to enjoin a product liability suit that was filed four and a half years after the confirmation of the plan and the sale of the assets. The matter considered by the court in Zerand-Bernal was one of jurisdiction, since the request to enjoin was brought at such a distant moment in time, in relation to the confirmation and the sale in the bankruptcy proceedings. The court found that "as a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker." Zerand-Bernal, 23 F.3d at 162. However, the Zerand-Bernal court still acknowledged that an allegation based on successorship doctrine would be inapplicable "if the plaintiff had a chance to obtain a legal remedy against the predecessor, even so limited a remedy as that afforded by the filing of a claim in bankruptcy." Zerand-Bernal, 23 F. 3d at 163. It is important, therefore, to note that the Pietri Retail Inc.'s bankruptcy proceedings were held in the Southern District of New York and the Puerto Rico Supreme Court, based on the record, found that the employee, who was based in Puerto Rico, had no knowledge of the transfer of the assets. Therefore, it determined that successor liability was applicable.

The State Court Litigants also rely on Western Auto Supply v. Savage Arms (In re Savage Indus.), 43 F.3d 714 (1st Cir. 1994), where the U.S. Court of Appeals for the First Circuit found that a purchaser could not rely on the bankruptcy court's jurisdiction to enjoin a successor liability claim when state court plaintiffs were not given notice of the terms of an all-asset transfer or the chapter 11 plan. The court emphasized that the parties in interest were never afforded "appropriate" notice of the chapter 11 proceeding, the chapter 11 plan, or the terms of a privately negotiated asset transfer agreement. Therefore, the court found that a successor liability claim based on state-law survived the chapter 11 proceeding. See Western Auto Supply, 43 F. 3d at 721. The claim therein could not be extinguished absent a showing of "appropriate notice in the particular circumstances." Id. In Western Auto Supply the transfer agreement terms were private and the parties had not sought bankruptcy court approval. "Participants in chapter 11 all asset-sales parties and bidders alike can avoid 'no man's land' by ensuring compliance with Code notice requirements to 'parties in interest'". Western Auto Supply, 43 F. 3d at 722-723.

However, in the instant cases, the Debtors' intent to sell and the sale procedures were notified to the Sale Notice Parties (which included the Debtors' employees) and the public since the beginning of the bankruptcy proceedings. The Debtors' motions for approval of bidding procedures included a proposed Asset Purchase Agreement expressly excluding the purchaser's assumption of employment-related liabilities, including severance, reinstatement, back pay, and successor liability. The proposed Asset Purchase Agreement also provided that the Purchaser would have no obligation to offer employment to the Debtors' employees and addressed the allocation of other employment-related responsibilities (Bankr. Case 23-02510, dkt. #65, Exhibit 6, Arts. 1.11.6.1, 5.3.1, 13, pp. 20, 29, 39–40; Bankr. Case 23-02513, dkt. #57, Exhibit 6, Arts. 1.11.6.1, 5.3.1, 13, pp. 20, 29, 39–40).

The *Bidding Procedures Order* dated August 23, 2023, required service of the Sale Notice on the Sale Notice Parties, expressly including the Debtors' employees, publication in a newspaper of national circulation, and posting of the sale-related documents on the case website (see, Bankr. Case 23-02510, dkt. #83; Bankr. Case 23-02513, dkt. #77). The *Bidding Procedures*

*Order* also provided that failure to object timely would bar objections to consummation of the sale and the related transactions (Bankr. Case 23-02510, dkt. #83, ¶¶ 20–22; Bankr. Case 23-02513, dkt. #77, ¶¶ 20–22). The Debtors subsequently filed a certificate of publication of the Sale Notice in the *San Juan Daily Star* and reported that the sale documents were available on the case website (Bankr. Case 23-02510, dkt. #146; Bankr. Case 23-02513, dkt. #146). Consequently, both the bankruptcy proceedings and the terms of the Section 363 sale of the Debtors' assets were public. See Caraballo-Cecilio v. Marina PDR Tallyman, LLC, 2016 U.S. Dist. LEXIS 11118, *10 (D.P.R. Jan. 29, 2016) (noting that the bankruptcy proceeding and the terms of 363 sales were public). Furthermore, the *Bidding Procedures Order*, auction and eventual sale of Debtors' assets, including the proposed Asset Purchase Agreement form, were readily available on the case website, as well as every order or motion filed regarding the sale of the Debtors' assets. Consequently, under the particular circumstances of these chapter 11 cases, the court finds that the notice provided was adequate to inform affected parties, including the Debtors' employees, of the proposed sale and afford them an opportunity to review its material terms and object before its approval.

This finding distinguishes these cases from Encanto Restaurants, Inc. v. Aquino Vidal (In re Cousins International Food, Corp.), 565 B.R. 450 (B.A.P. 1st Cir. 2017), where the Bankruptcy Appellate Panel for the First Circuit affirmed the denial of relief against creditors under a sale order because the creditors had not received adequate notice of the sale proceedings. There, the debtor had omitted the known creditors from its schedules and their pending prepetition action from its statement of financial affairs. Although counsel in the local-court action had learned of the bankruptcy filing through press reports, that general awareness did not substitute for adequate notice of the proposed sale and its material terms. Here, by contrast, the court has found that adequate notice of the proposed sale was provided.

After proper notice, a party may choose either to appear, acquiesce or contest. See Western Auto Supply, 43 F. 3d at 721. Furthermore, even if a party chooses to contest, an objection in no way warrants a favorable court determination. However, those who do not appear

certainly choose to acquiesce. The State Court Litigants chose not to appear and, therefore, not to contest the terms of the sale. They are, consequently, bound by the waiver granted to Metro Caguas on the *Sale Order*. The court notes that Metro Caguas recognized that "the only causes of action directly attributable to Metro Caguas post sale conduct" are: (i) a discrimination claim in Civ. Case No. HU2024CV00501; and (ii) potential claims for Metro Caguas' cancellation of the probationary period in Civ. Case No. CG2024CV02389. See, Bankr. Case No. 23-02510, dkt. #1605, p. 3; Bankr. Case No. 23-02513, dkt. #1696, p. 3.

*IV.* *Conclusion*

For the reasons stated above:

1. The *Motion for Reconsideration* filed by the State Court Litigants (Bankr. Case No. 23-02510, dkt. #1611; Bankr. Case No. 23-02513, dkt. #1703) and the motions filed by Alfonso Serrano Isern (Bankr. Case No. 23-02510, dkt. #1625; Bankr. Case No. 23-02513, dkt. #1717), Carmen M. Cortes Morales (Bankr. Case No. 23-02510, dkt. #1630; Bankr. Case No. 23-02513, dkt. #1722), and Ahira M. Lizardi Buonomo (Bankr. Case No. 23-02510, dkt. #1634; Bankr. Case No. 23-02513, dkt. #1726) joining and adopting the *Motion for Reconsideration* are hereby DENIED.

2. The *Motion in Compliance* filed by Metro Caguas (Bankr. Case No. 23-02510, dkt. #1605; Bankr. Case No. 23-02513, dkt. #1696) is also DENIED.

3. To the extent that the Metro Caguas and the State Court Litigants seek any additional relief from the court related to this matter, such requests are hereby DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 3rd day of November 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge